FILED
JANUARY 25, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 587

JUDGE NORGLE
MAGISTRATE JUDGE VALDEZ

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRYSTAL ALMAGUER, | |
| Plaintiff, | |
| v. | Case No.: |
| COOK COUNTY, and FELICE VANARIA, in his individual capacity, | |
| Defendants. | Plaintiff Demands Trial By Jury |

## COMPLAINT

NOW COMES Plaintiff, KRYSTAL ALMAGUER, by and through her attorneys, KURTZ LAW OFFICES, LLC, and complaining against Defendants, COOK COUNTY, and FELICE VANARIA, in his individual capacity, and states:

### Introduction

1.  Plaintiff Krystal Almaguer ("Almaguer") seeks redress for violations of her rights of equal protection under the Fourteenth Amendment to the Constitution of the United States pursuant to 42 U.S.C. § 1983 (Count I); and for violations of Illinois law for intentional infliction of emotional distress (Count II); for assault and battery (Count III); for respondeat superior (Count IV); and for indemnification (Count V). Plaintiff Almaguer seeks declaratory and injunctive relief as well as damages for her injuries.

### Jurisdiction and Venue

2.  Jurisdiction of this court is provided by 28 U.S.C. § 1331 and 1343. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because Plaintiff and all Defendants reside in this District and all events giving rise to Plaintiff's claims occurred within this District.

## The Parties

4. Plaintiff Krystal Almaguer ("Almaguer") is a resident of Cook County.

5. Defendant Cook County is a political subdivision of the State of Illinois. Oak Forest Hospital is an agency of Cook County through the Cook County Bureau of Health Services.

6. At all relevant times, Defendant Cook County employed Defendant Felice Vanaria ("Vanaria") as the Coordinator of Medical Education at its Oak Forest Hospital ("the Hospital"). Vanaria is sued in his individual capacity.

7. Upon information and belief, at all relevant times, Defendant Vanaria was a resident of Cook County.

8. Defendant Vanaria was acting under color of state law by using his position as a Cook County employee in order to sexually harass and discriminate against Almaguer violating her right of equal protection under the Fourteenth Amendment to the Constitution of the United States.

9. Defendant Cook County is responsible for the acts of Defendant Vanaria, as he was acting within the scope of his employment and pursuant to a policy, custom, and/or pattern of sex discrimination, sexual harassment, and violating individuals' rights of equal protection under the Fourteenth Amendment to the Constitution of the United States

2

## Facts Upon Which Claims Are Based

10. Plaintiff Almaguer is a professional massage therapist.

11. On or about January 25, 2007, Plaintiff Almaguer received a phone call from Defendant Vanaria. Vanaria asked Plaintiff if she was interested in a position at the Oak Forest Hospital.

12. Almaguer made an appointment with Defendants to drop off her resume that day.

13. When Almaguer arrived at the Hospital, she entered the Human Resources building through a door marked, "Education and Training," as directed to do so by Vanaria. Vanaria interviewed Plaintiff and then offered her a position at Oak Forest Hospital. Vanaria told Almaguer that the salary was $52,000 per year and that she would receive full benefits, vacation, personal days, and sick days. Vanaria told Almaguer that she would need to fill out an application, be fingerprinted, and submit to a drug screening.

14. Almaguer filled out the application form and signed the consent for a background check.

15. Vanaria said he would contact Almaguer about the exact start date, but that it would probably be in March 2007.

16. On or about February 1, 2007, Almaguer went to Vanaria's office to give him her social security card and birth certificate as requested by Defendants.

17. Vanaria shut the door and asked Almaguer, "How bad do you want this job?" Vanaria then stated, "How about you come over here and give me the biggest best kiss you have ever given?" and "I want a half hour massage with you wearing something sexy."

18. Almaguer was shocked, she rejected his proposition and told him that she did not want to kiss him or wear anything sexy.

19. Vanaria responded, "If you don't want the job, there's the door and good luck getting another job like this." Almaguer told him that she did want the job. Vanaria said, "Then you are going to have to give me something." Almaguer indicated that she would give him a massage and wear something sexy if it was a condition of employment.

20. Vanaria said he wanted to see what she looked like so she needed to take her clothes off. Almaguer told him that she did not want to and that she was not comfortable with that. Vanaria again said that she needed to do it in order to get the job.

21. Because it was a condition of employment, Almaguer reluctantly got undressed. Vanaria came around to the front of the desk and grabbed Almaguer and pulled her to him. He squeezed her buttocks and kissed her neck. Then, Vanaria kissed Almaguer on the lips and stuck his tongue in her mouth. Almaguer pulled away. Vanaria became upset and said, "Obviously, you're not into this." Almaguer, embarrassed, scared, upset, and afraid what else Vanaria might do to her, got dressed. Vanaria then called someone whom Almaguer believed was also with Human Resources to confirm how many vacation days Almaguer would receive. The other

Human Resources employee was on speaker phone and said that he could not believe that Vanaria was hiring Almaguer for this position. The other Human Resources employee talked about how he had hired a female employee ("Employee X") to work at Oak Forest Hospital. When Vanaria and the other Human Resources employee ended the telephone call, Vanaria stated to Almaguer that the other Human Resources employee had hired employee X conditioned upon sexual favors.

22. Vanaria then showed Almaguer the Rehabilitation Department of the Hospital, where he said she would be working.

23. Vanaria pointed to an ID card reader on the wall and told Almaguer that the ID reader was how she would clock in to get paid.

24. When Almaguer got back to her car, she was nauseous and started to dry-heave. She was very upset.

25. Later that same day or early the next morning, Almaguer called Vanaria and told him that she was uncomfortable and upset by what happened and declined the job.

26. On or about February 5, 2007, Vanaria called Almaguer again and stated that he had a new position open. Almaguer said that she was only interested in the position on the condition that she did not owe him anything and that she did not have to submit to his sexual demands to get the job.

27. On or about February 12, 2007, Vanaria called Almaguer and told her that her background check had gone through and that all she needed to do now was get fingerprinted and take the drug test. Vanaria then said that there were many other applicants for the job and that Almaguer was lucky to be getting such a position at 21

5

years old. Vanaria then told Almaguer that she still owed him a massage while wearing something sexy as a condition of getting the job. Almaguer did not want to have to do this in order to get the job, but reluctantly made a massage appointment for Vanaria on Thursday, February 15, 2007.

28.    On or about February 15th, 2007, Vanaria went to Almaguer's house, where her massage studio was located, for the massage that Vanaria required of Almaguer in order to get the job. Vanaria brought some employment papers with him. Vanaria undressed and told Almaguer to "get sexy," telling her to take off her clothes. Almaguer reluctantly started to get undressed and began to give Vanaria a massage. Almaguer asked Vanaria if he had previously conditioned employment for other women on sexual demands. Vanaria responded, "Yes," and told her he had done it approximately ten (10) other times.

29.    Vanaria turned over suddenly while Almaguer was giving him the required massage. Vanaria then grabbed Almaguer and pulled her to him and started licking and sucking on her breast. He then sexually assaulted her with his fingers. Vanaria then started performing oral sex on Almaguer. After just a few minutes, Vanaria became upset and said: "I can tell you're not into this, you are just lying there. You obviously don't want this job bad enough," and he started to get dressed. Almaguer told him that she did want the job. Vanaria picked up the employment papers and said, "You don't get these until you prove it to me." Almaguer reluctantly asked what she had to do, and Vanaria said that she had to "finish him." Almaguer did as she was told to do using her hand. Vanaria then gave Almaguer the employment papers to sign, as well as some health insurance information, in a plastic

6

bag with a form for her to sign stating that she received them. She signed the papers and Vanaria left.

30. Based on Vanaria's representations, Almaguer expected to start her new job on March 5, 2007.

31. On or about February 22, 2007, Almaguer received a phone call from a female, who identified that she was calling from the "HR Department at Oak Forest Hospital." She confirmed that Almaguer's start date was March 5, 2007, but said that the job title had been changed to "Therapist," so Almaguer needed to get in touch with Vanaria to set up another appointment to fill out a new application.

32. Almaguer called Vanaria. Vanaria stated that the Therapist position actually paid $10,000 more a year than the position he previously offered her. Vanaria stated that because he was giving her a job that paid $10,000 more a year that Almaguer owed him another massage for the job. Almaguer told him that she thought she was through with that; she had already done what he said she had to do in order to get the job in the first place. Vanaria replied that since the job paid $10,000 more that Almaguer had to "do something special" for him. Vanaria said that he would bring the job application to Almaguer the next day and collect on the massage.

33. After Almaguer got off of the phone with Vanaria, she was very upset. She looked up Oak Forest Hospital's phone number on the internet. Almaguer called the Human Resources Department and identified herself to the woman who answered. Almaguer told the woman that she had applied and been offered a job there, and that she had received a call from a woman in that Department. The woman stated that neither she nor the other woman in the Department had called Almaguer. She also

7

stated that they were not currently hiring or accepting applications.

34. Upon learning this information, Almaguer contacted the Orland Park Police Department.

35. Almaguer cooperated with the police to apprehend Vanaria.

36. Vanaria pled guilty to one count of Bribery and one count of Official Misconduct.

37. Vanaria utilized his position as an employee of Cook County in making the submission to his sexual demands a condition of employment.

38. At the time of the employment offers, Almaguer reasonably believed that Vanaria had the power to hire her.

39. Vanaria used Cook County supplies and facilities in making the offers of employment and pay increases to Almaguer that he conditioned upon her submitting to his sexual demands.

40. Vanaria made offensive and unwanted sexual advances towards Almaguer on the premises of Oak Forest Hospital, and committed assault, battery, and sexual assault against Almaguer.

41. Vanaria was on the clock for Cook County when he made Almaguer submit to his sexual demands in order to receive employment with Oak Forest Hospital and when he committed sexual assault against Almaguer.

42. Vanaria promised jobs at Oak Forest Hospital in exchange for and conditioned upon his sexual demands to other women prior to Plaintiff.

43. Defendants have engaged in gender discrimination and sexual harassment of Plaintiff in that she was offered employment positions and pay

8

increases at Oak Forest Hospital of Cook County in exchange for sexual demands, and she was subjected to offensive and unwelcome conduct by Vanaria, including sexual assault.

44.   Defendant Cook County's supervisors and top management knew or should have known of the harassment and discrimination directed at Plaintiff and other women, and failed to take any effective remedial measures to stop the harassment.

45.   Defendant Cook County has a policy, custom, and widespread practice of turning a blind eye to sexual harassment and gender discrimination. This policy, custom, and widespread practice was the moving force behind Defendant Vanaria's ability to sexually harass and discriminate against Plaintiff and other women.

46.   Defendant Cook County failed to provide proper training to its managers, supervisors, and employees to prevent sexual harassment and gender discrimination. Defendant Cook County's failure to train was deliberately indifferent to the rights of employees and potential employees within their purview.

### COUNT I
### (§ 1983 Violation of Equal Protection
### v. All Defendants)

47.   As against Defendants Cook County and Vanaria, Plaintiff restates and realleges by reference paragraphs 1 through 46 above as though fully set forth herein.

48.   Defendant Vanaria, while engaging in the conduct set forth herein, *supra,* was acting under color of state law, in that he misused his power possessed by virtue of state law and made possible only because he was clothed with the authority of the State of Illinois.

9

49. At the time of the employment offers, Almaguer reasonably believed that Vanaria had the power to hire her.

50. Defendants Cook County and Vanaria intentionally subjected Plaintiff to discriminatory treatment by offering employment positions and pay increases at Oak Forest Hospital of Cook County conditioned upon her submitting to Vanaria's sexual demands.

51. Defendant Vanaria's sexual harassment of Plaintiff was directed solely at Plaintiff because she is female.

52. Defendant Cook County failed to provide proper training to its managers, supervisors, and employees to prevent sexual harassment. Defendant Cook County's failure to train was deliberately indifferent to the rights of employees and job applicants within their purview.

53. The actions of Defendants against Plaintiff violate her equal protection right to be free from sexual harassment and gender discrimination under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

54. The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991

55. The actions of Defendants in engaging in sexual harassment against Plaintiff and intentionally discriminating against Plaintiff based on her gender has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

a.  All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

b.  Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the depression, humiliation, anguish, and emotional distress, caused by Defendant's conduct;

c.  Defendant be required to pay prejudgment interest to Plaintiff on these damages;

d.  A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

e.  A permanent injunction requiring the Defendant adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

f.  The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g.  Punitive damages as allowed by law as against the individual Defendant in his individual capacity only;

h.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.  Such other relief as the Court may deem just or equitable.

### STATE LAW SUPPLEMENTAL CLAIMS

### COUNT II

**(Intentional Infliction of Emotional Distress v. All Defendants)**

56.  As against Defendants Cook County and Vanaria, Plaintiff restates and realleges by reference paragraphs 1 through 46 above as though fully set forth herein.

57. The intentional acts of Defendants constitute extreme and outrageous conduct, beyond the bounds of decency, which inflicted severe emotional distress and mental anguish on Plaintiff.

58. As a proximate result of Defendants' unlawful acts, Plaintiff has suffered severe mental anxiety and emotional and physical distress.

59. Defendant Vanaria acted willfully and maliciously with respect to his treatment of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests:

    a. Economic losses Plaintiff sustained and will sustain as a result of the intentional infliction of emotional distress, including prejudgment interest on such amounts;

    b. Compensatory damages;

    c. Punitive damages as allowed by law against the individual Defendants in their individual capacity only;

    d. An award of reasonable attorneys' fees, costs, and litigation expenses; and

    e. Such other relief as the Court may deem just or equitable.

## COUNT III

### (Assault and Battery
### v. All Defendants)

60. As against Defendants Cook County and Vanaria, Plaintiff restates and realleges by reference paragraphs 1 through 46 above as though fully set forth herein.

61. Defendant Vanaria without cause or provocation assaulted and battered Plaintiff by engaging in and among the conduct set forth herein, *supra*.

62. Defendant Vanaria's conduct caused Plaintiff to be placed in well-founded fear of her safety and well-being.

63. Defendant Vanaria intentionally and unlawfully threatened and caused Plaintiff injury by force, which under the circumstances created in Plaintiff a well-founded fear of imminent peril.

64. Defendant Vanaria had the apparent present ability to effectuate and complete the injury so offered and threatened.

65. Defendant Vanaria's touching and assault and battery of Plaintiff described herein, *supra*, were performed without Plaintiff's consent and against her will, and resulted in harmful and/or offensive contact to Plaintiff.

66. At all relevant times to this action, Defendant Vanaria knew or reasonably should have known that his conduct was harmful and/or offensive to Plaintiff.

67. Defendant Vanaria's actions as alleged herein, *supra*, were willful and intentional and were taken with wanton disregard of Plaintiff's well-being.

68. The actions of Defendants in intentionally engaging in and condoning the assault and battery of Plaintiff has caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

    a. Compensatory damages;

    b. Punitive damages as allowed by law against the individual Defendants in their individual capacity only;

    c.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

    d.    Such other relief as the Court may deem just or equitable.

## COUNT IV

### (Respondeat Superior v. Cook County)

69.    As against Defendant Cook County, Plaintiff restates and realleges by reference paragraphs 1 through 46 above as though fully set forth herein.

70.    In committing the acts alleged herein, *supra*, Defendant Vanaria was a Cook County employee, acting at all relevant times within the scope of his employment.

71.    Defendant Vanaria's conduct described herein, *supra*, was willful and wanton.

72.    Defendant Cook County is liable as a principal for all torts committed by its agents.

    **WHEREFORE**, Plaintiff respectfully requests:

    a.    Compensatory damages;

    b.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

    c.    Such other relief as the Court may deem just or equitable.

## COUNT V

## (Indemnification
## v. Cook County)

73. As against Defendant Cook County, Plaintiff restates and realleges by reference paragraphs 1 through 46 above as though fully set forth herein.

74. Illinois law (745 ILCS §§ 10/2-302 and 10/9-102) provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

75. Defendant Vanaria was an employee of Cook County and acted within the scope of his employment in committing the misconduct described herein, *supra*.

76. Defendant Vanaria's conduct described herein, *supra*, was willful and wanton.

77. In the event Defendant Vanaria is found liable for his actions performed in the course of his employment, Cook County, Illinois must indemnify the employee for this verdict pursuant to § 10/2-302.

**WHEREFORE**, Plaintiff respectfully requests:

    a. Cook County, Illinois pay any compensatory judgments against Vanaria who acted in the course of his employment;

    b. Such other relief as the Court may deem just or equitable.


        Respectfully submitted,

        **KRYSTAL ALMAGUER**

        *s/Dana L. Kurtz*
        _____

        Attorney for Plaintiff

Dana L. Kurtz (ARDC# 6256245)
Heidi Karr Sleper (ARDC# 6287421)
KURTZ LAW OFFICES, LLC
414 South State Street
Lockport, Illinois  60441
Phone:  815.838.0968
Facsimile:  312.893.2239
E-mail:  dkurtz@kurtzlaw.us
E-mail: hsleper@kurtzlaw.us

16