## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KRYSTAL WILSON (formerly Krystal Almaguer),

        Plaintiff,

   v.

COOK COUNTY,

        Defendant.

Case No. 08 C 587

Judge Sharon Johnson Coleman

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff KRYSTAL WILSON (formerly Krystal Almaguer) (hereinafter "Almaguer"), through her counsel, respectfully responds to Defendant's Motion for Summary Judgment. As set forth below, Defendant's Motion should be denied.[1] In support, Plaintiff states as follows:

## INTRODUCTION & FACTUAL BACKGROUND

Defendant's motion for summary judgment shows a clear misunderstanding of the law. 42 U.S.C. § 1983, Title VII, and Illinois law provides protection for Almaguer for Defendant's rehiring of Vanaria despite obvious consequences and Defendant's failure to remedy Vanaria's pattern of abusing his Cook County position to demand sexual acts in exchange for the promise of Cook County benefits. This case demonstrates the kind of "plainly obvious consequence" of hiring Vanaria that the Supreme Court recognized would trigger liability in *Board of Cty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997) where Vanaria was rehired and engaged in the exact conduct that he previously did while employed by the County. Moreover, Title VII clearly protects applicants as employees, and Defendant fails to analyze this case under the legal authority that is applicable, *i.e.*, quid pro quo harassment. Plaintiff incorporates Plaintiff's Additional Statement of Facts and Plaintiff's Response to Defendants' Statement of Facts, as fully set forth herein.

---

[1] Defendant does not address Plaintiff's failure to supervise theory of liability, (*see* Dkt. #91 ¶¶ 53, 68, 69, 85, 97, 131), thus, no response is required from Plaintiff. (*See* Section I, *infra*). Moreover, Plaintiff voluntarily dismisses Plaintiff's failure to train theory under Plaintiff's Equal Protection § 1983 claim.

## ARGUMENT

### I.  Applicable Standards on Summary Judgment

Defendant is not entitled to summary judgment because there are genuine issues of material fact, when viewed in the light most favorable to Almaguer, that entitle her to present her claims to the jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must not weigh evidence or determine the truth of the matter rather than whether there is a genuine issue for trial. *See, e.g.*, *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315-16 (7th Cir. 2011); *see also Kodish v. Oakbrook Terrace Fire Protection Dist*., 604 F.3d 490, 507 (7th Cir. 2010) (reversing summary judgment where plaintiff's claims "are not so incredible or implausible, however, that a reasonable jury could not find in his favor"). As the movant, Defendant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If Defendant fails to meet this burden, its motion for summary judgment must be denied. *Id*. at 322. As to Plaintiff's theories of liability that Defendant does not address, a response is not required from Plaintiff where Defendant did not first identify a basis for summary judgment. *See Morgan v. Burlington N. R.R. Co*., 1999 WL 313763, *2, 182 F.3d 922 (7th Cir. 1999) (citing *English v. Cowell*, 10 F.3d 434, 437 (7th Cir.1993)).

### II.  Plaintiff Is Entitled To A Trial On Her Due Process Claim (Count III)

Defendant completely ignores the Supreme Court's decision in *Bryan County* in its analysis of Almaguer's due process claim. Instead, Defendant relies on a completely inapposite case, *Polenz v. Parrott*, 883 F.2d 551 (7th Cir. 1989), which dealt with an unsuccessful applicant for a liquor license. (Dkt. #144 at 8.) Defendant's failure to analyze the applicable law under which Almaguer's claims should be analyzed is a basis alone for denying Defendant's motion. *See Celotex, supra*.

Plaintiff's Due Process claim meets the requirements set forth in *Bryan County* to establish that Vanaria's use of his County position to demand sexual acts from Almaguer was a "plainly obvious consequence" of rehiring Vanaria. In *Bryan County*, the Court held that "where adequate scrutiny of

2

the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" 520 U.S. at 399.[2] Courts have acknowledged other ways of proving due process violations based on a failure to screen: the failure "has caused a pattern of violations;" or the municipality "had contemporaneous knowledge of the offending incident;" or in the absence of the first two, "the constitutional violation must have been so obvious or so likely to result that the municipality can reasonably be said to have been deliberately indifferent to the need to take action." *M.C. v. Pavlovich*, 2008 WL 2944886, *5 (M.D. Pa. July 25, 2008); *see also Doe v. New York City Dep't of Soc. Serv.*, 649 F.2d 134, 145 (2d Cir. 1981) (gross negligence or recklessness is enough). *Bryan County* dealt with the third method of proof. 520 U.S. at 399. The ultimate inquiry is whether the municipality was the "moving force" behind the injury. *Id.* at 404. A jury could find that Defendant violated Almaguer's due process rights under the first and third methods of proof.

Here, Vanaria's demands of sexual acts in exchange for County benefits from Almaguer as he had done so many times in the past was "so obvious" or "so likely to result" that a jury could find that the County was deliberately indifferent. *See Bryan County*, 520 U.S. at 418 (citing *Canton v. Harris*, 489 U.S. 378, 390 (1989)), *Pavlovich, supra*. The Director of Human Resources at the Cook County Adult Probation Department recognized in 1998 that Vanaria had engaged in behavior that "indicate[s] a pattern of similar and inappropriate actions on [his] part" and a "blatant abuse of [his] position and [his] authority." (PSOF ¶53.) The Director of Human Resources for Oak Forest Hospital admitted that she would have wanted to know if an employee had previously been terminated for sexual misconduct because she understood there was a risk for repeated behavior. (*Id.* ¶47.) In fact, Vanaria's conduct was repeated at Cook County Oak Forest Hospital before he engaged in the abuse

---

[2] In *Bryan County*, the Supreme Court found that Burns' pleading guilty to traffic offenses and other misdemeanors did not put the Sheriff on notice that Burns' use of excessive force would have been a plainly obvious consequent of the hiring decision. Whereas here, the County rehired Vanaria, despite prior complaints of the exact same conduct.

and assault against Almaguer. Vanaria admitted to Almaguer that he previously conditioned employment for other women on sexual demands approximately ten (10) other times. (*Id.* ¶7.) Cook County had information that made it obvious that Vanaria would likely inflict the particular injury suffered by Almaguer, yet made the decision to rehire him, and even in the face of this clear and unreasonable risk, Cook County took no action to adequately supervise him despite his repeated misconduct and prior complaints, which made his constitutional violations obvious. *See Pavlovich*, 2008 WL 2944886, at *6; *see also Bryan County*, 520 U.S. at 418 ("*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff").

Additionally, Cook County policymakers were deliberately indifferent to the known risks. Defendant does not dispute that President Stroger and Commissioner Moreno are policymakers. (*See generally* Dkt. #144; *see also* DSOF ¶ 25.) Cook County Deputy Bureau Chief Gershon testified that it was President Stroger's decision whether exempt employees, (*i.e.*, political hires) should be rehired who have committed sexual misconduct. (PSOF ¶31.) Deputy Bureau Chief Gershon admitted that it did not matter whether Vanaria had prior complaints of sexual misconduct because Commissioner Moreno had the right to have someone hired that he wanted and that was approved by President Stroger. (*Id.* ¶23.) Moreno admitted that he "did not care" whether Cook County Human Resources checked to see whether someone he hired had a history of sexually abusing people. (*Id.* ¶36.) Moreno admitted that he "did not care" if the people that he hired had a criminal background. (*Id.* ¶35.) Moreno admitted that he knew Vanaria worked for the County prior to working for him, but he did not check his personnel file because it was not important as Vanaria was a good political worker. (*Id.* ¶21.) Moreno admitted that he did not know and "did not care" whether Human Resources actually did background checks, so long as they hired who he wanted. (*Id.* ¶34.)

Vanaria's propensity for using his Cook County employment to demand sexual favors in exchange for Cook County benefits and services was an obvious risk. Prior to the sexual misconduct committed against Almaguer, Vanaria engaged in similar conduct while he worked at Cook County

4

in Adult Probation . (*Id.* ¶¶49-53.) In 1995, a complaint was made against Vanaria that he offered a probationer a more lenient check-in schedule in exchange for sexual favors. (*Id.* ¶50.) No corrective action was taken. (*Id.* ¶51.) In 1998, more probationers complained that Vanaria offered to give the probationers a more flexible schedule in exchange for his sexual demands. (*Id.* ¶52.) After investigating the 1998 complaints and re-opening the 1995 complaint, the Human Resources Director found that the three complaints "indicate a pattern of similar and inappropriate actions on [Vanaria's] part" and was a "blatant abuse of [his] position and [his] authority." (*Id.* ¶53.) Cook County terminated Vanaria's employment with the Adult Probation Department as a result of his sexual misconduct. (DSOF ¶ 17.) Cook County is responsible for Vanaria's actions as an employee of the Adult Probation Department. (*See* Resp. to DSOF ¶6.)

The indifference of Cook County policymakers to the known risk, led directly to the consequence that was predictable. *See Bryan County*, 520 U.S. at 410. Despite Vanaria's history of using his Cook County employment to demand sexual acts in exchange for promises of Cook County benefits, Vanaria was hired on the recommendation of Commissioner Moreno and with the approval of President John Stroger to work at Oak Forest Hospital. (PSOF ¶23.) Vanaria's supervisor did not recommend hiring Vanaria because he was not qualified for the CME coordinator position, he did not have healthcare experience, and he did not have experience coordinating training programs or educational activities. However, she was told that she had to hire him by Cook County Human Resources, and that the order came from "downtown," *i.e.*, President Stroger's office. (*Id.* ¶24.) After Vanaria's rehiring by Cook County, this time at Oak Forest Hospital, he continued to engage in a continued "pattern of similar and inappropriate actions." In August 2005, an Eli Lilly representative complained that Vanaria asked her to give him a massage in exchange for setting up CME programs. (*Id.* ¶55.) Police discovered that in December 2005 he forced another woman to kiss him in his office in the Human Resource Department in exchange for promises of getting her a job. (Pl.'s Ex. 8.) Vanaria admitted to Almaguer that he previously conditioned employment for other women on sexual

5

demands approximately ten (10) other times. (*Id.* ¶7.) Vanaria had a large amount of pornographic pictures on his work computer and spent large amounts of time surfing the internet for pornography during his work hours. (*Id.* ¶58.) In January 2007, Vanaria continued his "pattern of similar and inappropriate actions" by committing the same type of egregious sexual misconduct against Almaguer as he had done with other women in the past. (*Id.* ¶1-11.) Even after Defendant became aware of the sexual misconduct against Almaguer, Defendant did not address the harassment. Instead of Cook County terminating Vanaria's employment for the sexual misconduct against Almaguer, Cook County allowed him to be "laid off" and eligible for rehire. (*Id.* ¶18.) Oak Forest Hospital was told by the Bureau of Human Resources to put Vanaria on administrative leave and "not do anything" to discipline him when he was arrested for the incidents with Almaguer. (*Id.* ¶19.) On this evidence, a reasonable jury could conclude that Defendant was deliberately indifferent to a known risk and that indifference caused the predictable consequence of allowing Vanaria to abuse his position with the County, causing harm to Almaguer. Thus, Defendant's motion should be denied.

Defendant erroneously argues that Cook County did not know of the complaints against Vanaria because his employment at the Cook County Adult Probation Department was not tied to Cook County. (Dkt. #144 at 10.) However, Cook County is liable for the actions of its employees at Adult Probation. *See Flanagan v. Office of the Chief Judge of the Cir. Ct.*, 663 F. Supp. 2d 662, 666 (N.D. Ill. 2009) (Cook County liable for Title VII judgment brought by Adult Probation employee). Additionally, employees in the Adult Probation Department are Cook County employees who receive Cook County benefits and belong to the Cook County pension. (PSOF ¶39.) As Exhibit 5 demonstrates, Cook County was aware that Vanaria was suspended and terminated from Adult Probation. (Pl.'s. Ex. 5.) Even if Cook County did not have actual knowledge of Vanaria's past "pattern of similar and inappropriate actions" and "blatant abuse" of his position and authority, Cook County can be held liable because it should have known of Vanaria's propensity for using his County employment to demand sexual acts in exchange for County benefits. Any alleged lack of knowledge

was caused by Cook County's policy of not checking references and employment history of political hires. *See Brandon v. Holt*, 469 U.S. 464, 467 (1985) ("The Director's lack of actual knowledge of Allen's propensities was found to have been caused by the 'policies in effect during that period' . . . which policies included 'the inherently deficient nature of police administrative procedures involving the discovery of officer misconduct.'"). Reviewing Vanaria's personnel file and contacting his previous employers would have easily revealed that Vanaria was previously terminated from Cook County while working in the Adult Probation Department for sexual misconduct. Employee records for the Cook County Adult Probation Department are kept in the Human Resources office in the County Building. (PSOF ¶40.) Cook County Human Resources maintains centralized information for personnel files and hiring. (*Id.* ¶42.) Department heads can access Cook County personnel files. (*Id.* ¶43.) Moreno could have asked to see Vanaria's personnel file prior to hiring him, but did not. (*Id.* ¶42.) Deputy Bureau Chief Gershon admitted that she learned that Vanaria worked for the Adult Probation Department by looking at his Cook County personnel file. (*Id.* ¶45.) Moreover, Defendant produced Vanaria's personnel file and the complaints against him from Adult Probation, despite Defendant's attempt to claim that it did not have access to it. (*Id.* ¶41.)

Moreover, Cook County has a widespread custom or practice of not checking references or employment background of political hires. (PSOF ¶32, 38, 44, 46, 48.) Human Resources Director for Oak Forest Hospital admitted that Oak Forest Hospital has a policy for verifying prior employment and checking references of new employees, but they do not follow this procedure for political hires. They do not do any employment verification on political hires, perform a background check, or even attempt to determine if the person is qualified for the position. (*Id.* ¶32.) President Stroger could hire whoever he wanted with exempt positions, including known sexual abusers and convicted felons. (*Id.* ¶¶31, 48.) Commissioner Moreno admitted that he did not know or care whether Human Resources actually did background checks, so long as they hired the people he wanted them to. (*Id.* ¶34.) The Cook County Bureau of Human Resources did not perform a reference

7

check on Vanaria, nor did anyone at Oak Forest Hospital, (*Id.* ¶38). It is no secret that Cook County has an enduring practice of making employment decisions based on political affiliation. *See Shakman v. Cook County Democratic, et al.*, 69-cv-02145 (N.D. Ill. 1969).[3/] The rehiring of Vanaria is not the only time a political hire was made without a background check based solely on the request of President Stroger that resulted in a decision that put Cook County citizens at risk. For example, President Stroger hired Shirley Glover despite her 10 prior felony convictions and arrest for embezzling over $180,000 in 2005. Similarly, in 2008, President Stroger put Tony Cole on the County payroll despite his criminal background. (PSOF ¶48.)

Defendant argues without distinction between Plaintiff's Due Process and Equal Protection claim that Plaintiff cannot establish *Monell* liability because Vanaria was not acting under "color of law." (Dkt. #144 at 6.) However, Plaintiff's Due Process claim does not require that she prove Vanaria acted under "color of law." *See generally Bryan County*, 520 U.S. 397; *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1519 (7th Cir. 1990) ("the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983"). Here, President Stroger's actions and the County's customs and practices implemented by Stroger, Moreno, and the Deputy Bureau Chief caused the impermissible hiring procedures that allowed Vanaria to commit the sexual assault against Almaguer. The final decision-maker was former President Stroger, who ordered Vanaria be rehired for the position at Oak Forest Hospital. President Stroger is a final decision maker for purposes of hiring exempt employees. (PSOF ¶¶31; DSOF ¶25.) The Supreme Court has long-acknowledged that a single act of a final decision maker may subject a municipality to liability. *See, e.g.*, *Canton,* 489 U.S. at 390, n. 10; *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citing *Owen v. Independence*, 445 U.S. 622, 633, 655, n. 39 (1980)); *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 250-252 (1981) (implicitly assuming that a policymaker's single

---

[3/] The Court may take judicial notice of the dockets and opinions of other courts. Fed. R. Evid.201(c); *see also 520 South Mich. Ave. Assoc., Ltd. v. Shannon*, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008); *In re Standfield*, 152 B.R. 528, 531 (N.D. Ill. 1993).

act can sustain § 1983 action). The Deputy Bureau Chief implemented the practice that an elected official's choice of a *Shakman* exempt employee was not to be questioned or reviewed even in the face of obvious consequences. (PSOF ¶¶23, 30, 31, 34-36, 48.) This practice was condoned by County elected officials who did not care what the risks were so long as who they wanted to be hired was in fact hired. (*Id*. ¶34.) Commissioner Moreno's statements – which as a Commissioner it is undisputed that he is a policymaker – that he "did not care" (*Id*. ¶¶29, 34, 36) are alone sufficient for a jury to find that Defendant was deliberately indifferent to Almaguer's rights. *See, e.g., Doe*, 649 F.2d at 145. Because a jury could find that Cook County was deliberately indifferent in rehiring Vanaria, Defendant's motion for summary judgment should be denied.

## III. Title VII Protects Plaintiff from *Quid Pro Quo* Sexual Harassment (Count I)

Defendant ignores that Plaintiff's Title VII claim is premised on *quid pro quo* sexual harassment, instead analyzing Almaguer's claims under a failure to promote or failure to hire analysis. Defendant argues that summary judgment should be granted based on the following erroneous propositions that do not apply to *quid pro quo* claims: (1) that only an employee can bring a claim under Title VII against the employer; (2) that there was no adverse action; and (3) that there was no similarly situated employee hired into a massage therapist or physical therapist position. (Dkt. #144 at 2-6.) Because these arguments are legally erroneous to *quid pro quo* sexual harassment claims, Defendant's motion must be denied. Defendant does not assert any other bases for summary judgment, and cannot do so in their reply brief. *See Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011).

First, Defendant's contention that Title VII requires an employee/employer relationship is dispelled by the Supreme Court's analysis in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)**;** and *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986). *See also* Federal Civil Jury Instructions of the Seventh Circuit, 3.04 (setting forth elements for harassment claim). In *Ellerth, Faragher*, and *Meritor*, the Supreme Court discussed the agency principals that can be applied in this case. *Ellerth*, 524 U.S. at 758-59; *Faragher*, 524 U.S. at

802; *Meritor,* 477 U.S. at 72 (*citing* Restatement (Second) of Agency §§ 219–237 (1958)) ("We []

decline the parties' invitation to issue a definitive rule on employer liability, but we do agree with the

EEOC that Congress wanted courts to look to agency principles for guidance in this area."). Under

agency principals approved by the Supreme Court in analyzing sexual harassment claims, Defendant

is liable for Vanaria's conduct. The Supreme Court set out the principles of § 219(2) of the

Restatement where a "master may be liable for torts of servants acting solely for their own purposes

and hence not in the scope of employment." *Ellerth,* 524 U.S. at 758. The Supreme Court held:

> Subsections (b) and (d) are possible grounds for imposing employer liability on account of a
> supervisor's acts and must be considered. Under subsection (b), an employer is liable when
> the tort is attributable to the employer's own negligence. § 219(2)(b). Thus, although a
> supervisor's sexual harassment is outside the scope of employment because the conduct was
> for personal motives, an employer can be liable, nonetheless, where its own negligence is a
> cause of the harassment. An employer is negligent with respect to sexual harassment if it
> knew or should have known about the conduct and failed to stop it. Negligence sets a
> minimum standard for employer liability under Title VII; but Ellerth seeks to invoke the more
> stringent standard of vicarious liability. . . . When a party seeks to impose vicarious liability
> based on an agent's misuse of delegated authority, the Restatement's aided in the agency
> relation rule, rather than the apparent authority rule, appears to be the appropriate form of
> analysis.

*Id.* at 759-760.[4/] Here, Defendant was "negligent or reckless" or "[Vanaria] purported to act or to

speak on behalf of [Defendant] and there was reliance upon apparent authority, or he was aided in

accomplishing the tort by the existence of the agency relation." *See* Restatement (Second) of Agency

§§ 219–237; *see also Ellerth,* 524 U.S. at 758-59; *Faragher,* 524 U.S. at 802; *Meritor,* 477 U.S. at

72. Defendant does not argue that Vanaria was not its "agent," therefore, it is waived. *Mendez, supra.*

Thus, Almaguer need not address the issue herein. *See Morgan, supra.*

---

[4/]    The Restatement (Second) of Agency acknowledges that Clause (d) includes situations in which the
principal's liability is based upon conduct which is within the apparent authority of a servant. See §§ 247-249.
Apparent authority may also be the basis of an action of deceit (§§ 257-264), and even physical harm, (*see* §§
265-267). In other situations, the servant may be able to cause harm because of his position as agent, as where
a telegraph operator sends false messages purporting to come from third persons. See § 261 ("A principal who
puts a servant or other agent in a position which enables the agent, while apparently acting within his
authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.").
"The enumeration of such situations is not exhaustive, and is intended only to indicate the area within which a
master may be subjected to liability for acts of his servants not in scope of employment." Restatement
(Second) of Agency §§ 219–237 (1958) (comments).

Defendant's contention that Almaguer is not protected under Title VII because she was not an employee is also dispelled by the plain language of the statute, which provides: "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex. . . ." 42 U.S.C. § 2000e-2(a)(1). The statute does not say "it shall be an unlawful employment practice for an employer to discriminate against any *employee*," but refers to "any individual." It was Congress's intent to "strike at the entire spectrum of disparate treatment. . . ." *E.g., Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 78 (1998); *see also Nichols v. Frank,* 42 F.3d 503, 510 (9th Cir. 1994) ("There can be no justification for requiring a worker to engage in sexual acts in order to obtain a job. . . .") (*abrogated* on other grounds by *Burlington Industries, Inc. v. Ellerth,* 118 S. Ct. 2257 (1998)); *Horn v. Duke Homes,* 755 F.2d 599, 603 (7th Cir. 1985) ("sexual consideration constitutes precisely the kind of artificial, arbitrary, and unnecessary barrier to employment, that Title VII was intended to prevent"). The cases cited above and the plain language of the statute show that Title VII's protections extend beyond employees. Applicants of an employer, like Almaguer, are protected from sexual harassment as well.

Second, Defendant's contention that Almaguer's claim must fail because there was no "adverse employment action" is also dispelled by Supreme Court case law. In *Meritor,* the Supreme Court held that "the language of Title VII is not limited to 'economic' or 'tangible' discrimination." 477 U.S. at 64.[5/] Further, "[i]t is without question that sexual harassment of female employees in which they are asked or required to submit to sexual demands as a *condition to obtain employment or to maintain employment or to obtain promotions* falls within protection of Title VII." *Id.* at 68. The Seventh Circuit in *Jansen v. Packaging Corp.* ruled that an adverse job consequence is not necessary to raise a cognizable claim of *quid pro quo* harassment in the face of an unambiguous threat. 123 F.3d 490, 499 (7th Cir. 1997) (plurality opinion) (Flaum, J., concurring), 123 F.3d at 579 (Wood, J., concurring). Judge Flaum stated that "a clear and serious *quid pro quo* threat alters the 'terms and conditions' of

---

[5/]    Defendant does not dispute that Vanaria's conduct was unwelcome. *See Meritor,* 477 U.S. at 68.

employment in such a way as to violate Title VII and therefore can constitute an actionable claim *even if the threat remains unfulfilled*." 123 F.3d at 499 (Flaum, J., concurring) (emphasis added). Additionally, the Ninth Circuit found that the "intertwining of a request for the performance of sexual favors with a discussion of actual *or potential job benefits* or detriments in a single conversation constitutes *quid pro quo* sexual harassment." *Nichols*, 42 F.3d at 513 (emphasis added). Actual economic loss is not required. *Id*. at 779. Under *Ellerth*, Vanaria's explicit condition that Almaguer submit to his unwelcome advances establishes the harm element of a *quid pro quo* prima facie case. 524 U.S. at 753-754; *see also Karibian v. Columbia Univ.*, 14 F.3d 773, 779 (2d Cir. 1994). Thus, it is not material that there was no position available.

Defendant also argues that "Plaintiff was never denied any tangible benefit where Vanaria never had the power to interview, hire or offer employment to Plaintiff for any position at Oak Forest Hospital." (Dkt. #144 at 3.) It is not determinative that Vanaria did not have the actual authority that he claimed to possess. It is enough that Vanaria had the apparent authority to carry out the prohibited purpose. *Ellerth*, 524 U.S. at 759; *Jansen*, 123 F.3d at 504 ("*[q]uid pro quo* is always a creature of power. . . ."); *see also Karibian*, 14 F.3d at 777 ("[a] *quid pro quo* harasser, by definition, wields the employer's authority to alter the terms and conditions of employment – either actually or apparently – the law imposes strict liability"). Apparent authority is present when the offending employee creates a false impression of having the power to act on behalf of the employer. *Ellerth*, 524 U.S. at 759; *Gawley v. Indiana Univ.*, 276 F.3d 301, 309 (7th Cir. 2001). Liability will attach where a plaintiff reasonably believes the harasser had the authority to act on behalf of the employer. *See, e.g., Ellerth*, 524 U.S. at 759; *Jansen*, 123 F.3d at 500.

Here, Vanaria had an office in the Human Resource Department. He had access to employment applications and was "expected to provide applications to job seekers inquiring about employment with the County." He had Almaguer fill out an application. He gave her specific information about the prospective job, including salary and vacation days. He photocopied her identification, had her

sign a consent form to be fingerprinted, and took her on a tour of the location in the therapy department where she would be working. Vanaria also gave her materials to sign up for benefits. (PSOF ¶¶1, 2, 5, 6.) He had someone posing as Human Resources call Almaguer and relay her start date to her. (*Id*. ¶8.) Almaguer believed that Vanaria worked for Human Resources and believed that he would get her the job that he promised her. (*Id*. ¶4.) Almaguer reasonably believed Vanaria had the apparent authority to hire her for a position. *See, e.g., Ellerth*, *Jansen*, *supra*.

Furthermore, Vanaria was at his office in the Human Resource Department and still on the clock being paid by Cook County when he made sexual demands to Almaguer in exchange for offers of employment. (PSOF ¶6.) Vanaria admitted that he utilized his position as a Cook County employee in making the sexual demands of Almaguer and that he used Cook County supplies and facilities in making offers of employment and offers of pay increases to Almaguer, which he conditioned upon the receipt of sexual acts. (*Id*. ¶11.) Vanaria had a large amount of pornographic pictures on his work computer and spent large amounts of time surfing pornography during his work hours. (*Id*. ¶58.)

Cook County is strictly liable for the conduct of Vanaria, even absent a "company act." *See Savino v. C.P. Hall Co.*, 988 F. Supp. 1171, 1183 (N.D. Ill. 1997); *see also Jansen,* 123 F.3d at 494-95 (7th Cir. 1997) (per curiam). Agency principles explain that "the employer, not the innocent plaintiff, should bear the cost of the torts of its employees as a required cost of doing business, insofar as such torts are reasonably foreseeable and the employer is a more efficient cost avoider than the injured plaintiff." *Horn*, 755 at 605; *see also* Federal Civil Jury Instructions of the Seventh Circuit, 3.04 (liability attaches where "Defendant knew or should have known about the conduct; and Defendant did not take reasonable steps to [correct the situation]/[prevent harassment from recurring]."). Thus, a jury could find that Cook County is liable on Almaguer's Title VII claim. Therefore, Defendant's motion for summary judgment should be denied.

## IV. Plaintiff Is Entitled To A Trial On Her Equal Protection Claim (Count II)

Defendant's motion must also fail on Plaintiff's Equal Protection claim because (1) Supreme

Court and Seventh Circuit case law establish that Plaintiff is not required to prove that Vanaria was acting under "color of law" under *Monell*; and (2) Defendant fails to acknowledge that Almaguer's Equal Protection claim is brought under a theory of *quid pro quo* sexual harassment, and not under a theory of gender discrimination for failure to hire. Defendant erroneously argues that Plaintiff must establish that Vanaria was acting under color of law to prove her Equal Protection claim. (Dkt. #144 at 6.) However, in each of the cases relied upon by Defendant, (*see* Dkt. #144 at 6-7 (citing *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003); *Mainor v. Chicago Trans. Auth.*, 2005 WL 3050604, ** 3-4 (N.D. Ill. 2005), *Murphy v. Chicago Trans. Auth.*, 638 F. Supp. 464, 467-68 (N.D. Ill 1986)), the courts' discussion of color of law is limited to claims against individual defendants and not a municipality. Claims against a municipality are analyzed under *Monell*, and there is no "color of law" requirement. *See Monell*, 436 U.S. at 691-95. The language of § 1983 "plainly imposes liability on a government that, under *color of some official policy*, 'causes' an employee to violate another's constitutional rights." *Id.* at 692 (emphasis added). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694-95; *see also Gibson v. Chicago*, 910 F.2d 1510, 1519-20 (7th Cir. 1990). Based on *Monell* and *Gibson*, this Court should reject Defendant's argument that Almaguer must prove that Vanaria was acting under color of law to prove her Equal Protection claim.

Almaguer brings claims against Defendant for discrimination based on her gender in violation of the Equal Protection Clause and 42 U.S.C. § 1983. Sexual harassment constitutes sex discrimination in violation of the equal protection clause and is actionable under § 1983. *See, e.g., Bohen v. East Chicago*, 799 F.2d 1180, 1186 (7th Cir.1986). A single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes. *Id.* at 1186-87 (citing *Batson v. Kentucky*, 476 U.S. 79 (1986)). A plaintiff can make an ultimate showing of sex discrimination either by showing that sexual harassment that is attributable to the employer under § 1983 by showing that

the conscious failure of the employer to protect the plaintiff from the abusive conditions created by employees amounted to intentional discrimination. *Id.* at 1187.

There is sufficient evidence for a reasonable jury to conclude that Defendant had a custom and practice of failing to adequately respond to complaints of sexual harassment and equal protection violations. *See EEOC v. Mitsubishi Motor Mfg.*, 990 F. Supp. 1059, 1074 (C.D. Ill. 1998) ("The existence of a company's policy of tolerating sexual harassment is the basis for pattern or practice liability."); *see Woodward v. Corr. Med. Services*, 368 F.3d 917, 929 (7th Cir. 2004) ("evidence of a single violation of federal rights can trigger municipal liability if the violation was a 'highly predictable consequence' of the municipality's failure to act").

Defendant engaged in a custom and practice of condoning sexual harassment against Plaintiff and other women. President Stroger's actions and the County customs and practices implemented by President Stroger, Commissioner Moreno, and the Deputy Bureau Chief that caused the impermissible hiring procedures allowed Vanaria to commit the sexual assault against Almaguer. Moreover, municipal liability will attach, as here, where complaints of "sexual harassment were addressed superficially if at all." *See Bohen*, 799 F.2d at 1189; *see also Reynolds v. Borough of Avalon*, 799 F. Supp. 442, 447 (D.N.J. 1992). Defendant failed to adequately address complaints of sexual harassment against Vanaria. After discovering the multiple complaints of sexual misconduct, Director Vaughan explained that the three cases "indicate a pattern of similar and inappropriate actions on [Vanaria's] part, and a blatant abuse of Vanaria's position and authority. (PSOF ¶53.) While Vanaria was terminated because of his sexual misconduct, he was rehired. (*Id.* ¶23.) Commissioner Moreno admitted that he did not care whether Human Resources checked to determine whether someone he hired had a history of sexually abusing people. (*Id.* ¶38.) In August 2005, prior to the sexual misconduct committed against Almaguer, Vanaria's supervisor, the Human Resources Director and the COO of Cook County's Oak Forest Hospital were aware that an Eli Lilly representative had made similar complaints against Vanaria. (*Id.* ¶55.) Oak Forest Hospital did not

question Vanaria about his statement, did not interview the woman who made the complaint, did not interview any other pharmaceutical representatives, did not interview the doctor who informed them of the complaint, and did not check phone records, which would have substantiated her claims. (*Id.* ¶55.) Vanaria's supervisor and the COO of Oak Forest Hospital admitted that had they known that there were similar complaints of sexual misconduct made against Vanaria while he was previously employed at Cook County in Adult Probation, it would have made a difference in looking at the Eli Lilly representative's complaint. (*Id.* ¶56.) Vanaria had a large amount of pornographic pictures on his work computer and spent large amounts of time surfing the internet for pornography during his work hours. (*Id.* ¶58.) Vanaria admitted to Almaguer that he had previously conditioned employment for other women on sexual demands approximately ten (10) other times. (*Id.* ¶7.) Even after Defendant became aware of the sexual misconduct against Almaguer, Defendant did not address the harassment. As a last straw, despite Vanaria's arrest and the overwhelming evidence against him, Cook County did not terminate his employment, but allowed him to be laid off, and eligible for rehire. (*Id.* ¶18.) Cook County Bureau of Human Resources told supervisors at Oak Forest Hospital to not do anything to discipline him when he was arrested for the incidents with Almaguer. (*Id.* ¶19.) Commissioner Moreno admitted that he did not inform Cook County Commissioner Tobolski of Vanaria's past sexual abuse or criminal background even though he was aware of Vanaria's background and was aware that Commissioner Tobolski subsequently hired Vanaria for a position in the Village where Tobolski was also mayor. (*Id.* ¶27.) While Defendant claims to have a sexual harassment policy that forbade Vanaria's conduct, the mere existence of a written policy will not shield Defendant from liability. *Meritor,* 477 U.S. at 72. As in *Meritor*, Vanaria was not aware of any such policy and did not recall any training on it. (PSOF ¶57.) Thus, a jury could find that "sexual harassment was the general, on-going, and accepted practice at the [] Department, and high-ranking, supervisory, and management officials responsible for working conditions at the department knew of, tolerated, and participated in the harassment." *Bohen, supra.*

Even if Almaguer were required to prove that Vanaria was acting under color of law, it is a question for the jury "where there are unanswered questions of fact regarding the proper characterization of the action." *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980); *see also Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 48 (1st Cir. 1999); *Pesek v. Marzullo*, 566 F. Supp. 2d 834, 839 (N.D. Ill. 2008); *Coles v. City of Chicago*, 361 F. Supp. 2d 740, 747 (N.D. Ill. 2005).[6/] As Defendant recognizes, an individual may be found to have acted under color of law "when the state has cloaked the defendant in some degree of authority – normally through employment or some other agency relationship." (Dkt. #144 at 6.) *See also* Pattern Jury Instructions of the Seventh Circuit 7.03. The Supreme Court has stated that "state employment is generally sufficient to render the defendant a state actor under our analysis." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935, n.18 (1982); *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-23 (2d Cir. 2004). In *Wudtke v. Davel*, the Seventh Circuit, stated: "[w]hen a complaint alleges . . . serious physical assault . . . under circumstances where the assaulter is enabled to take his actions because of his governmental position, it states a claim for purposes of § 1983." 128 F.3d 1057, 1064 (7th Cir. 1997). In *Griffin v. City of Opa-Locka*, the Eleventh Circuit found that the city manager had acted under color of law where "[w]hen [plaintiff] refused his sexual advances, Neal, as he had done numerous times throughout the course of his harassment of her, reminded her of his authority by saying 'I can't believe you are telling me no after everything that I have done for you.' Neal then proceeded to rape her." 261 F.3d 1295, 1304 (11th Cir. 2001). In *Dang Vang v. Vang Xiong X. Toyed*, the Ninth Circuit upheld the jury's determination that defendant acted under color of law when he raped women looking for employment while meeting with them under pretext of providing services pursuant to his job. 944 F.2d 476, 479-80 (9th Cir.1991). In *Doe v. Taylor Indep. Sch. Dist.*, the Fifth Circuit found that there was a sufficient nexus between a teacher's duties and his sexual relationship with a student for color of law purposes where the sexual misconduct began on school grounds and where the

---

[6/] All of these cases provide further support that individual liability claims require proof of color of law.

defendant "took full advantage of his position as [plaintiff's] teacher" to create opportunities for sexual contact, exempt her from doing schoolwork, to give her good grades, and to intervene on her behalf to get her a better grade in another class. 15 F.3d 443, 452, n. 4. (5th Cir. 1994). In *Rogers v. City of Little Rock,* the Eighth Circuit found that a police officer acted under color of law where he followed plaintiff home after a traffic stop, told her she owed him one for letting her off without a ticket, and then he raped her. 152 F.3d 790, 798 (8th Cir.1998).

Similarly, a jury could find based on the evidence that Cook County "clothed" Vanaria with apparent hiring authority, even if he did not actually have it, or in the alternative, a jury could find that Vanaria "use[d] or misuse[d]" his authority. Thus, even if Almaguer was required to present some evidence that Vanaria acted under color of law, which she is not, *see Monell* and *Gibson*, *supra*, there is sufficient evidence upon which a jury could find that Vanaria misused his authority or his apparent authority given to him by Cook County. (*See* PSOF ¶¶1-8; *see also* Section III, *supra*.) Therefore, Defendant's motion for summary judgment should be denied.

## V.  State Law Claims

Defendant waived any argument that summary judgment should be granted on Plaintiff's claims of assault and battery (Count V) and willful and wanton misconduct (Count VII) as Defendant has not raised any argument on them. *See* Section I, *supra*. Defendant argues that it cannot be held liable for Almaguer's intentional infliction of emotional distress claim (Count IV) and respondeat superior claim (Count VI) because Vanaria's actions were outside the scope of his employment. (Dkt. #144 at 18.) The question of whether Vanaria was acting within the scope of his employment is a question for the jury. *See* IPI 50.04, 50.06.01; *see also Sunseri v. Puccia*, 97 Ill. App. 3d 488, 493 (1st. Dist. 1981). In addition, agency principals impose liability on employers even where employees commit torts outside the scope of employment where "the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Restatement (2d) of Agency § 219(2)(d); *see also Ellerth*, 524

U.S. at 758; *Faragher,* 524 U.S. at 777. An agent is acting in the scope of his employment "if he is engaged in the transaction of business which has been assigned to him by his principal, or if he is doing anything which may reasonably be said to have been contemplated as a part of his employment." IPI 50.06.

Vanaria used his position as a County employee to facilitate the sexual assault of Almaguer. Vanaria had an office in the Human Resource Department of the Hospital. He had access to employment applications. Defendant admits that he was expected to provide applications to job seekers inquiring about employment with the County. He had Almaguer fill out an application, gave her specific information about the prospective job including salary, and vacation days, photocopied her identification, had her sign a consent form to be fingerprinted, gave her materials about signing up for benefits, and took her on a tour of the location in the therapy department where she would be working. (PSOF ¶1-2, 5, 6.) Vanaria admitted that he utilized his position as an employee of Cook County in making the sexual demands of Almaguer in exchange for promises that he would get her a job. (*Id.* ¶11.) Vanaria admitted that he used Cook County supplies and facilities in making offers of employment and offer of pay increases to Almaguer which he conditioned upon the receipt of sexual favors. (*Id.* ¶11.) Vanaria admitted that he was acting within the scope of his employment when he made sexual demands on Almaguer in exchange for offers of employment. (*Id.* ¶13.) Vanaria was at his office and still on the clock being paid by Cook County when he made sexual demands to Almaguer in exchange for offers of employment. (*Id.* ¶10.) Thus, he was "he was aided in accomplishing the tort by the existence of the agency relation." Restatement (2d) of Agency § 219(2)(d); *see also Ellerth*, 524 U.S. at 758; *Faragher,* 524 U.S. at 777. Therefore, there are disputed issues of fact as to whether Vanaria was acting within the scope of his employment, especially when he was "expected to provide applications to job seekers inquiring about employment with the County" (PSOF ¶2) and admitted that he was acting within the scope of his employment (*Id.* ¶13). There are disputed issues of fact as to whether Vanaria was aided in accomplishing the torts by the

existence of the agency relationship. There are also disputed issues of fact whether he had apparent authority. Therefore, Defendant's motion should be denied.

Defendant's reliance on *McPherson v. City of Waukegan*, 379 F.3d 430 (7th Cir. 2004) supports Almaguer's position. (Dkt. #144 at 19.) The *McPherson* court dealt with liability under the Illinois Workers Compensation Act (IWCA), which requires a showing that "the City itself 'has committed, commanded, or expressly authorized' the torts against her." *McPherson*, 379 F.3d at 443. However, under *respondeat superior* and agency principals, it is not necessary that an act or failure to act must have been expressly authorized by Cook County in order for the County to be liable. IPI 50.06. The Seventh Circuit acknowledged in *McPherson* that "management's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct." 379 F.3d at 443 (*quoting Thomas v. Habitat Co.,* 213 F.Supp.2d 887, 892 (N.D. Ill. 2002)); *see also Zuidema v. Raymond Christopher, Inc.*, 2011 WL 2647993, *3 (N.D. Ill. June 30, 2011). The evidence is sufficient upon which a jury could find that Cook County had knowledge of prior complaints both at Cook County Adult Probation, over which Vanaria was terminated, and the complaints at Cook County Oak Forest Hospital. This lack of follow up and lack of supervision is "equivalent to express authorization" by Cook County. *McPherson, Zuidema, supra.*

Defendant erroneously argues that Almaguer cannot bring an IIED claim because acts of sexual assault are *per se* outside the scope of employment. (Dkt. #144 at 19.) Defendant fails to take into consideration the doctrine of apparent authority is inherent in *respondeat superior* law. *See Primeaux v. United States*, 102 F.3d 1458, 1462 (8th Cir. 1996). As discussed above, Vanaria acted with apparent authority made possible only by his position at Cook County and Almaguer was reasonable in her belief that he had such authority. Additionally, Vanaria admitted to acting within the scope of his employment when committing the acts of sexual misconduct against Almaguer. (PSOF ¶ 13.) Therefore, Plaintiff's IIED claim should be tried to a jury and Defendant's motion for summary judgment should be denied.

## CONCLUSION

WHEREFORE, for the above stated reasons, Plaintiff respectfully requests that this Court deny

Defendant's Motion for Summary Judgment, and grant such other relief as is just and equitable.

Respectfully submitted,

KRYSTAL ALMAGUER

*s/Heidi Karr Sleper*

_____

Attorney for Plaintiff

Dana L. Kurtz (ARDC# 6256245)
Heidi Karr Sleper (ARDC# 6287421)
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois
Phone: 630-323-9444
Facsimile: 630-604-9444
E-mail: dkurtz@kurtzlaw.us
E-mail: hsleper@kurtzlaw.us

**PROOF OF SERVICE**

The undersigned, an attorney, on oath states that I served this notice pursuant to the District Court's ECF system as to ECF filers on February 28, 2012, to:

Shandra Leary
Aaron Bond
Assistant States Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois  60602

*s/Heidi Karr Sleper*
*Electronically filed on February 28, 2012*