IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRYSTAL ALMAGUER, | )<br>) |
| Plaintiff, | ) Case No. 08 C 587<br>) |
| | ) Judge Sharon Johnson Coleman |
| v. | )<br>) |
| COOK COUNTY, | )<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Krystal Almaguer ("Plaintiff" or "Almaguer")[1], a resident of Cook County, brings forth this matter against Defendant Cook County ("Defendant" or "Cook County"), a municipal corporation, alleging: (1) sexual harassment and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e *et seq*. ("Title VII") (Count I); (2) violations of her equal protection and due process rights under the Fourteenth Amendment pursuant to 42 U.S.C § 1983 ("Section 1983" or "§ 1983") (Counts II and III); and (3) violations of Illinois law for the intentional infliction of emotional distress (Count IV), assault and battery (Count V), *respondeat superior* (Count VI), and willful and wanton misconduct (Count VII). Defendant moves for summary judgment on all claims pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1. For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part.

**Background**

The following facts are taken from the pleadings, the discovery and disclosure materials on file, and affidavits. All inferences have been drawn in favor of the non-movant, Plaintiff Almaguer. Defendant Felice Vanaria ("Vanaria") was employed from

---

[1] Plaintiff currently named Krystal Wilson, was formerly named Krystal Almaguer at the initial filing of the complaint. (Compl. ¶ 1). For purposes of this opinion and consistency, Plaintiff is hereinafter, referred to as "Almaguer."

1984 through 1998 with the Cook County Adult Probation Department.[2] (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 5). In 1998, after an investigation, Vanaria was terminated. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶¶ 8-17). During his employment with the Cook County Adult Probation Department, in 1995 and 1998, two probationers lodged complaints against Vanaria for demanding sexual favors in exchange for more lenient probation conditions. In addition to these two complaints, sexually inappropriate letters between Vanaria and a third probationer were intercepted by the Cook County Adult Probation Department.[3] (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶¶ 9-10). In 2002, Vanaria worked for Defendant as an administrative assistant assigned to Cook County Commissioner Joseph Moreno. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 19). On July 26, 2002, Vanaria's fingerprints were taken in order to check Vanaria's criminal background. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 20). Subsequently, in 2005, Vanaria was hired by Defendant as the Administrative Assistant III at Oak Forest Hospital. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶29). On January 5, 2005, Vanaria's fingerprints were taken before he started to work at Oak Forest Hospital.

In his position as an Administrative Assistant III at Oak Forest Hospital, Vanaria worked as a Continuing Medical Education ("CME") Coordinator. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 35). Vanaria's main responsibility as a CME Coordinator was to schedule and coordinate programs for the medical staff. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 36). A pharmaceutical representative complained to Vanaria's direct

---

[2] The parties dispute whether Cook County, as a municipal entity, is responsible for the Cook County Adult Probation Department. Plaintiff contends that Cook County is responsible for Vanaria's actions as an employee of the Adult Probation Department. (Pl.'s Mem. in Opp'n to Def.'s MSJ at 5). Defendant argues that Plaintiff conflates Cook County with the Cook County Adult Probation Department. Defendant contends that the Cook County Adult Probation Department is a unit of the Circuit Court of Cook County and that Cook County "is not accountable for knowledge or events of a separate legal entity." (Def.'s Reply in Supp. of MSJ at 2). Accordingly, Defendant contends that "any conclusions or facts asserted [that conflate Cook County with the Cook County Adult Probation Department] by the Plaintiff should be disregarded in considering the instant motion for summary judgment against Cook County." (Def.'s Reply in Supp. of MSJ at 2). The Court finds Defendant's argument unpersuasive given the fact that the Cook County Adult Probation Department is usually represented by the Cook County State's Attorney's Office. It is untenable that Cook County would continuously represent the Cook County Adult Probation Department in litigation, an alleged "separate legal entity," when it had no responsibility over the Cook County Adult Probation Department. However, this Court need not address the merits of Defendant's argument in depth as we resolve all ambiguities and draw all inferences in favor of the nonmoving party for purposes of this motion for summary judgment.
[3] The parties dispute whether the allegations from the 1995 investigation were "fully investigated" or whether there was enough evidence to show that what was alleged actually took place. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶¶ 9-10).

supervisor that in exchange for setting up a CME speaker program at Oak Forest Hospital, Vanaria had demanded a massage from the representative. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 44). Vanaria's supervisor subsequently reported the complaint and after an investigation, it was determined that there was not enough evidence to sustain the allegations against Vanaria.[4] As a result of the investigation, Vanaria received verbal counseling and was prohibited from further contact with the pharmaceutical representative who lodged the complaint. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 48-49). This was the only documented complaint against Vanaria during his employment at Oak Forest Hospital. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 50-51).

Vanaria's position did not give him the authority to hire individuals, nor did he have the authority to offer anyone a position of employment at Oak Forest Hospital, nor did he have the authority to make recommendations to human resources at Oak Forest Hospital for either the hiring or termination of an individual.[5] (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 37). Plaintiff Almaguer is a professional massage therapist. (Pl.'s Stmt. of Additional Facts at ¶1; Almaguer Dep. Tr. 7:1-24). As part of her job, Almaguer would travel to perform massages on clients at their homes. (Almaguer Dep. 25:17-19). One of her clients referred Vanaria to Almaguer for a massage. (Almaguer Dep. 25:13-16). On or about January 25, 2007, Almaguer received a phone call from Vanaria asking what massage services she provided and if she had any flyers which he could pass out at Oak Forest Hospital. (Almaguer Dep. 27:2-6). Almaguer asked if the hospital was hiring and made an appointment to submit her resume to Vanaria. (Almaguer Dep. 27:7-12; Compl. at ¶ 27). Vanaria interviewed Almaguer at the hospital and offered her a position. (Compl. at ¶ 28). Vanaria told Plaintiff that her salary would be $52,000 per year and that she would receive full benefits, vacation, personal days and sick days. (Compl. at ¶ 28). Vanaria also informed Almaguer that she needed to complete an application, be fingerprinted and consent to drug screening. (Compl. at ¶ 28). Almaguer completed the

---

[4] Again, the parties dispute whether the investigation was in fact a "full investigation" and whether or not there was enough evidence to sustain the allegations against Vanaria. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 46-47); *see also supra* note 3.

[5] Plaintiff admits that Vanaria did not have any actual authority to hire individuals, but argues that by virtue of his status as a Cook County employee, Vanaria had some authority to make recommendations to human resources at Oak Forest Hospital for the hiring of an individual. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 37).

3

application form and gave her consent for a background check before leaving the hospital. (Compl. at ¶ 29).

Pursuant to Vanaria's request for her social security card and birth certificate, Almaguer returned to Vanaria's office on February 1, 2007. (Compl. at ¶ 31). Upon her arrival, Vanaria shut the door and proceeded to make certain sexual requests of her in exchange for her employment with the hospital including a kiss, removal of her clothing, and a massage "with [Almaguer] wearing something sexy." (Compl. at ¶¶ 32-36). Almaguer states that she thought Vanaria's demands were a condition of her employment, and therefore, she undressed as requested. (Compl. at ¶ 36). After she complied, Vanaria then squeezed Almaguer's buttocks and kissed her on her mouth and neck. (Compl. at ¶¶ 32-36). Almaguer eventually pulled away from Vanaria's advances and got dressed. Once dressed, Vanaria took Almaguer to the Rehabilitation Department in the hospital and explained that it was where she would be working. (Compl. at ¶¶ 36-38). Shortly thereafter, Almaguer telephoned Vanaria and explained that she was uncomfortable with their last interaction and declined the position with the hospital. (Compl. at ¶¶ 39-40).

On February 5, 2007, Almaguer was contacted by Vanaria who offered her another position at the hospital. (Compl. at ¶ 41). Almaguer expressed interest in the position on the condition that she did not have to submit to sexual demands in order to receive the job. (Compl. at ¶ 41). On February 12, 2007, Vanaria called Almaguer again and affirmed that as a condition of employment, she would still have to give him a massage while wearing something sexy. (Compl. at ¶ 42). Almaguer states that she reluctantly scheduled a massage appointment with Vanaria for Thursday, February 15, 2007 at her home. (Compl. at ¶ 42).

On or about February 15, 2007, Vanaria arrived at Almaguer's home massage studio for his scheduled massage with employment paperwork for Almaguer to sign. (Compl. at ¶ 43). Vanaria got undressed and Almaguer states that at Vanaria's direction, she got undressed and began to give Vanaria a massage. (Compl. at ¶ 43). During the massage Vanaria told her that he had previously conditioned employment in exchange for sexual demands with ten other women prior to Almaguer. (Compl. at ¶ 43). During the massage, Vanaria turned to face Almaguer, pulled her towards him, and touched her in a

sexual manner. (Compl. at ¶ 44). Vanaria, upset with Almaguer for her reluctance to engage in further sexual activity, explained to her that he would not give her the employment papers unless she performed manual stimulation on him. (Compl. at ¶ 44). Almaguer complied with Vanaria's request and was eventually given the employment papers. (Compl. at ¶ 44). Almaguer signed the papers and Vanaria left her home. (Compl. at ¶ 44).

On or about February 22, 2007 Almaguer received a phone call from a woman who explained that she was calling from the Human Resources Department at Oak Forest Hospital to confirm that Almaguer's start date was March 5, 2007. (Compl. at ¶ 46). The woman explained that the job title had been changed to "Therapist" and that Almaguer needed to set up another appointment with Vanaria to complete a new application. (Compl. at ¶ 46). Almaguer subsequently called Vanaria and inquired about the change in job title. (Compl. at ¶ 47). Vanaria explained that the Therapist position paid $10,000 more a year and that Almaguer owed him another massage for the job. (Compl. at ¶ 47). Vanaria said that he would bring the new job application with him when he was to receive his second massage. (Compl. at ¶ 47).

Immediately thereafter, Almaguer called Oak Forest Hospital's Human Resources Department and explained that she had been offered a position with the hospital. (Compl. at ¶ 48). Almaguer was informed, however, that Oak Forest Hospital was not hiring or accepting employment applications. (Compl. at ¶ 48). Upon learning this information, Almaguer contacted Orland Park Police Department. (Compl. at ¶ 49). Vanaria was placed on unpaid administrative leave after being arrested by the Orland Park Police. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 33). Vanaria never returned to work at Oak Forest Hospital after placed on leave and his final day of employment was on March 30, 2007. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 34). Vanaria eventually pled guilty to one count of bribery and one count of official misconduct.[6] (Compl. at ¶ 51). Almaguer now brings forth several claims against Cook County alleging that as Vanaria's employer, Cook County is liable for Vanaria's misconduct. (Compl. at ¶¶ 54-

---

[6] On July 26, 2007, Vanaria pled guilty to official misconduct and bribery. As a result, Vanaria pled guilty to many of the underlying allegations made by Almaguer. Vanaria was sentenced to thirty months of sex offender probation and does not contest the sexual allegations raised in this instant matter. (Vanaria Tr. 61:23-62:10).

5

71). Specifically, Almaguer filed a complaint against Defendant, Cook County alleging: (1) sexual harassment and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e *et seq*. ("Title VII") (Count I); (2) violations of her equal protection and due process rights under the Fourteenth Amendment pursuant to 42 U.S.C § 1983 (Counts II and III); and (3) violations of Illinois law for the intentional infliction of emotional distress (Count IV), assault and battery (Count V), *respondeat superior* (Count VI), and willful and wanton misconduct (Count VII). (Compl. at ¶¶ 72-132).

**Legal Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, all ambiguities must be resolved and all inferences drawn in favor of the nonmoving party. *Abdullahi v. City of Madison*, 423, F.3d 763, 773 (7th Cir. 2005). Summary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent. *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985).

**Discussion**

1. *Title VII: Sexual Harassment & Gender Discrimination Claims*

Defendant argues that Plaintiff's Title VII claims fail because there was no employer/employee relationship between Almaguer and Cook County. (Def.'s MSJ at 2). In response, Plaintiff proffers a *quid pro quo* sexual harassment argument and contends that in such cases, no employer/employee relationship is required. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 9).

It is well-established that to bring an action pursuant to Title VII for alleged unlawful employment practices, a plaintiff must prove the existence of an employment relationship. *See Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991); *see also Levin v. Madigan*, No. 07 C 4765, 2011 U.S. Dist. LEXIS 74475, at

*24 (N.D. Ill. July 12, 2011). Title VII provides a broad definition of the term "employee":

> The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 USCS § 2000e(f); *see also Knight*, 950 F.2d at 380. In determining whether a business relationship is one of employee/employer, courts look to the economic realities of the relationship and the degree of control the employer exercises over the alleged employee. *See Knight*, 950 F.2d at 380. "Independent contractors are not employees for Title VII purposes" and "the employment relationship must be affirmatively demonstrated in order to maintain a Title VII claim." *See Van Ratliff v. Christ Hosp. & Med. Ctr.*, No. 96 C 4916, 1997 U.S. Dist. LEXIS 13586, at *18 (N.D. Ill. Aug. 28, 1997).

As a threshold matter, Defendant argues that Plaintiff's Title VII claims must be dismissed "where there existed no employer/employee relationship between Plaintiff and Cook County and where Cook County did not deprive Plaintiff of any tangible employment benefit." (Def.'s MSJ at 2). Additionally, Defendant argues that because Vanaria had no power to interview, hire or offer employment to anyone at Oak Forest Hospital, Plaintiff was never denied any tangible benefits. (Def.'s MSJ at 3). Moreover, Defendant argues that because the two positions that Plaintiff thought she was interviewing for were not available at Oak Forest Hospital, Plaintiff's Title VII claims must be dismissed. (Def.'s MSJ at 3-4).

Plaintiff does not dispute that there existed no employer/employee relationship. Instead, Plaintiff argues that since her Title VII claims are premised on a theory of *quid pro quo* sexual harassment, Defendant's arguments are all inapplicable. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ. at 9). Plaintiff contends that *quid pro quo* sexual harassment claims are not subject to the employer/employee requirement for Title VII claims. In support of this argument Plaintiff cites *Burlington Indus., Inc v. Ellerth*, 524 U.S. 742 (1998), *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Meritor Savings Bank,*

7

*FSV v. Vinson*, 477 U.S. 57 (1986) for the proposition that agency principles are applicable to the case at hand. Accordingly, Plaintiff argues that "under agency principals [sic] approved by the Supreme Court in analyzing sexual harassment claims, Defendant is liable for Vanaria's conduct." (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 10). Indeed, the Plaintiff cites cases in which the court turns to agency principles for Title VII interprets the term "employer" to include "agents." *Burlington*, 524 U.S. at 742. However, these cases do not address the threshold question of whether the Plaintiff here meets the requisite employment relationship in order to bring a Title VII action. Those cases sought to discern the scope of vicarious liability within the context of an employment relationship. Here, despite Vanaria's outrageous conduct, the Plaintiff cannot meet the requisite employment relationship nor does she attempt to claim such relationship exists. The record is bereft of any material facts that demonstrate any economic realities of an employer/employee relationship or any degree of control exercised by Vanaria over Plaintiff as an alleged employee. Accordingly, Defendant's motion for summary judgment regarding Plaintiff's Title VII claims is granted due to Plaintiff's failure to establish an employer/employee relationship. Therefore, the Court need not address the merits of Plaintiff's *quid pro quo* sexual harassment claim.

2. *Section 1983 Claims*

Section 1983 actions require a two-part showing. "A party wishing to assert a claim based on § 1983 must allege [1] 'the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law.'" *Trautvetter v. Quick*, 916 F.2d 1140, 1148 (7th Cir. 1990)(citing *West v. Atkins*, 487 U.S. 42 (1988)).

Defendant argues primarily that Plaintiff's Section 1983 claims fail because Plaintiff cannot establish that Vanaria was acting under color of law. (Def.'s MSJ at 7-8). Defendant contends that because "the allegations against Vanaria which give rise to Plaintiff's action against the County were not related to the duties and powers incidental to Vanaria's position at Oak Forest Hospital," his alleged conduct "bore no relation to any state powers assigned to him by the County" and therefore could not have occurred under color of law as is required to sustain a §1983 action. (Def.'s MSJ at 6-7).

8

A conclusion that an individual state employee did not act under color of state law does not allow for summary judgment on a municipal liability claim. *Gibson*, 910 F.2d at 1519; *see also Garcia v. City of Chicago*, 2003 U.S. Dist. LEXIS 5655 (N.D. Ill. Apr. 7, 2003) (noting the difference between a conclusion that an individual defendant was not acting under color of state law and a plaintiff's claim against a city for municipal liability). Indeed, "section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution. *Garcia*, 2003 U.S. Dist. LEXIS 5655, at *4. In *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court held that Congress intended municipalities and other local government entities, such as the City, to be included among those "persons" to whom § 1983 applies. *Id*. Therefore, a claim against an individual defendant and a claim against a municipality are two separate and discrete § 1983 claims. "On a municipal liability claim, the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." *Gibson*, 910 F.2d at 1519.

In response to Defendant's motion, Plaintiff asserts that her § 1983 claims do not require that she prove Vanaria acted under color of law. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 8). Indeed, whether or not Vanaria acted under color of law is inapposite to Plaintiff's municipal liability claim. S*ee Garcia*, 2003 U.S. Dist. LEXIS 5655, at *5-6. Here, Plaintiff alleges that Defendant has a municipal policy of failing to verify the employment references and background of a political hire. This is sufficient to meet the "under color of law" requirement for a municipal defendant pursuant to Section 1983.

Having established that Plaintiff properly asserts that her alleged deprivation was committed by a "person" acting under color of state law, the next relevant inquiry is whether Plaintiff has suffered a constitutional injury. Here, Plaintiff alleges constitutional injuries in violation of (1) her equal protection right to be free from sexual harassment and gender discrimination and (2) her due process right to personal integrity and liberty (Compl. ¶¶ 87, 93).

Focusing on the Constitutional violation requirement, Defendant argues that Plaintiff fails to show that she was subject to gender discrimination for purposes of her equal protection claims. (Def.'s MSJ at 8). Defendant contends that Plaintiff cannot

9

show a widespread Cook County practice, custom or policy caused the injury alleged through the Defendant's deliberate conduct. (Def.'s MSJ at 9). Plaintiff responds that evidence of a single act of sexual harassment can trigger municipal liability if the violation was a highly predictable consequence of the municipality's failure to act. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 15).

Sexual harassment by a state employer constitutes sex discrimination for purposes of the equal protection clause. *See Bohen v. East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986). "[A] plaintiff wishing to sustain an equal protection claim of sexual harassment must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens." *Trautvetter*, 916 F.2d at 1149. A plaintiff can make an ultimate showing of sex discrimination either by showing the employer's actions or policy amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination. *See Bohen*, 799 F.2d at 1187 (citing *Meritor*, 477 U.S. at 57).

Here, Defendant argues that Plaintiff's equal protection claims fail because Almaguer does not present sufficient evidence of a widespread policy of failing to adequately address sexual harassment complaints. (Def.'s MSJ at 9). Defendant argues that Plaintiff must establish that a widespread practice, custom or policy caused injury and that the municipality through its deliberate conduct was the moving force behind that alleged injury. (Def.'s MSJ at 9). Defendant contends that Plaintiff fails to show that Cook County was aware of a substantial risk, failed to take appropriate steps to protect Plaintiff from the known danger, or a pattern of constitutional violations. (Def.'s MSJ at 9-10).

Plaintiff argues that "there is sufficient evidence for a reasonable jury to conclude that Defendant had a custom and practice of failing to adequately respond to complaints of sexual harassment." (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 15). Plaintiff alleges that Defendant engaged in a custom and practice of condoning sexual harassment and that practices implemented by policy makers allowed Vanaria to sexually assault Plaintiff. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 15). Plaintiff contends further that Defendant failed to adequately address complaints of sexual harassment, failed to

10

properly supervise the Defendant, and failed to provide proper training to its managers, supervisors and employees to prevent sexual harassment. (Compl. at ¶¶ 84-86; Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 15-16).

Viewing the facts in the light most favorable to the non-movant Plaintiff, a material issue of fact exists as to whether Vanaria's misconduct was a highly predictable consequence of Cook County's alleged failure to adequately respond to sexual harassment complaints against Vanaria. Prior to the facts alleged in this instant action, three complaints were made against Vanaria for misuse of his employment status to gain sexual favors. Additionally there was another incident where Vanaria exchanged sexually inappropriate letters with a probationer. Although all these incidents were investigated and resulted in a finding that there was not enough evidence to sustain the allegations against Vanaria, the parties dispute the adequacy of those investigations and findings. These incidents demonstrate that Cook County responded to complaints of sexual harassment once they were made, but continued to hire Vanaria in public service situations. Accordingly, a material issue of fact exists as to Plaintiff's Section 1983 equal protection claim.

Defendant next argues that summary judgment should be granted regarding Plaintiff's § 1983 due process claims because Almaguer fails to demonstrate that Cook County was deliberately indifferent in its hiring practices. Plaintiff responds that Cook County's failure to properly screen applicants prior to hiring has caused a pattern of violations such that a jury could find that the Cook County was deliberately indifferent to the risks resulting from this practice.

To satisfy the second element in a § 1983 action (alleging a violation of a right secured by the Constitution and laws of the United States) based on due process, the plaintiff must demonstrate: (1) that the claimed interest is a protected property or liberty interest under the fourteenth amendment; (2) that the alleged loss amounted to a deprivation; and (3) that the deprivation was without due process of law. *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989). Accordingly, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was

taken with 'deliberate indifference' as to its known or obvious consequences" and "a showing of simple or even heightened negligence will not suffice." *Id*. at 406-407.

Cook County argues that prior to hiring Vanaria, his fingerprints were taken, as they were for all employees with Cook County, and checked at random to determine criminal backgrounds. (Def.'s MSJ at 13). Further, Cook County verified Vanaria's previous employment with Commissioner Moreno. (Def.'s MSJ at 13). Defendant concedes that because Vanaria was a "Shankman" exempt employee, any further checking was to be done by the Department that hired him. (Def.'s MSJ at 14). Defendant does not provide any information as to any additional background checks done on Vanaria, but nevertheless argues that this hiring process does not support an inference that Cook County was deliberately indifferent to the likelihood that Vanaria could violate Almaguer's constitutional rights. (Def.'s MSJ at 14).

Because Almaguer does not allege that Cook County directly violated any federal law, or directed or authorized the deprivation of federal rights, Almaguer must demonstrate that Cook County's action was done with "deliberate indifference" as to its known or obvious consequences. *Brown*, 520 U.S. at 409. Almaguer argues that Cook County's failure to properly screen applicants prior to hiring has caused a pattern of violations such that a jury could find that the Cook County was deliberately indifferent to the risks resulting from this practice. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 3). In support, Plaintiff alleges that the failure to check Vanaria's criminal background, Cook County's failure to investigate Vanaria's past sexual misconduct and termination from Cook County Adult Probation, deposition statements that suggest indifference to whether political hires had a criminal background, and Cook County's general policy of failing to undertake more substantive background checks for "political hires" amount to deliberate indifference to an obvious risk. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 4).

Cook County argues that while their hiring process may demonstrate possible negligent hiring practices, it does not amount to deliberate indifference of Almaguer's constitutional rights. (Def.'s MSJ at 15). Defendant argues that even if its alleged inadequate scrutiny of Vanaria's background rendered Vanaria's misconduct more likely to occur, it does not mean that Vanaria's conduct was a foreseeable consequence of Cook County's actions. *See Brown*, 520 U.S. at 410-411. However, here, Almaguer's

allegations are not based on a single act of negligent conduct, such as one person failing to check one reference, but instead Almaguer alleges repeated insufficient or negligent practices that should have been in place to prevent employees similar to Vanaria from obtaining his position and having the opportunity to commit the unlawful acts alleged herein. *See Woodard*, 368 F.3d 917, 929. Plaintiff's allegation suggests that Vanaria's background demonstrated an obvious likelihood that he would engage in the sexual misconduct alleged in this matter. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 3-4). Further, Almaguer has presented statements that suggest that Cook County supervisors were deliberately indifferent to these risks. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 4; Moreno Dep. at 82:3-85:2). Therefore, Plaintiff has presented a factual question as to whether Cook County's hiring procedures demonstrate a deliberate indifference to Vanaria's foreseeable sexual misconduct.

Accordingly, Defendant's motion for summary judgment regarding Plaintiff's Section 1983 claim for violations of her due process right to personal integrity and liberty is denied. Defendant's motion for summary judgment regarding Plaintiff's § 1983 equal protection claim is denied.

3. *State Law Claims*

Defendant argues that summary judgment should be granted concerning all Almaguer's state claims because Cook County cannot be held liable for Vanaria's actions that were outside the scope of his employment. (Def.'s MSJ at 18). Plaintiff contends that Cook County waived any argument that summary judgment should be granted regarding Plaintiff's assault and battery (Count V) and willful and wanton misconduct (Count VII) claims.[7] Plaintiff contends that with regards to Almaguer's emotional distress (Count IV) and *respondeat superior* (Count VI) claims, whether or not Vanaria's actions were outside the scope of his employment is a question for the jury.

An employer may be liable for the torts of its employees if the tort is committed within the scope of the employment. For conduct to be considered within the scope of one's employment the conduct must: (1) be of the kind the employee is employed to

---

[7] Although it is unclear in her briefing, Plaintiff appears to allege that Defendant's failure to respond to Count V (assault and battery) and Count VII (willful and wanton misconduct) results in waiver of summary judgment regarding those claims. (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 2, 18). In fact, Defendant responded to all Plaintiff's state law claims at pages 18-20 of its Motion for Summary Judgment. Accordingly, this court need not address Plaintiff's waiver argument.

perform; (2) occur substantially within the authorized time and space limits; and (3) be performed, at least in part, by purpose to serve the master. *See Krause*, 571 F. Supp. 2d at 864. When the motive for the employee's tort is personal and solely for the benefit of the employee, the employer is not subject to liability. *Id*.

In this case, Vanaria held the position of Adminstrative Assistant III as an employee of Oak Forest Hospital. In this position, he had no power to hire or interview anyone for a position with the hospital. (Pl.'s Resp. to Def.'s Rule 56 Stmt. at ¶ 37). While some of the events complained of occurred during authorized time and space limits of Vanaria's employment, the alleged culpable conduct was performed well outside of Vanaria's duties at the Hospital. Therefore, Cook County cannot be held liable for Vanaria's tortious acts under Illinois law.

Almaguer argues however that under agency principles, Cook County can be held liable for Vanaria's conduct even if it was committed outside the scope of his employment. Citing *Ellerth*, Almaguer argues that employers can be held liable "where the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relationship." (Pl.'s Mem. Law in Opp'n to Def.'s MSJ at 18-19); *see also Ellerth*, 524 U.S. at 58 (quoting Restatement (2d) of Agency § 219(2)(d)). However, *Ellerth* goes on to say that Section 219(2)(d) of the Restatement provides no basis whatsoever for imposing vicarious liability on an employer for sexual harassment claims. The Supreme Court explained that "liability under § 219(2)(d) depends upon the plaintiff's belief that the agent acted in the ordinary course of business or within the scope of his apparent authority. However, in this day and age, no sexually harassed employee can reasonably believe that a harassing supervisor is conducting the official business of the company or acting on its behalf. Indeed, the Court admits as much in demonstrating why sexual harassment is not committed within the scope of a supervisor's employment and is not part of his apparent authority."

Accordingly, Almaguer's reliance on *Ellerth* to impose liability on the Defendant for Vanaria's conduct, performed outside the scope of his employment, is unpersuasive. Plaintiff's motion for summary judgment regarding Plaintiff's state law claims against Cook County is granted.

**Conclusion**

Defendants' motion for summary judgment is denied in part and granted in part. Defendant's motion for summary judgment regarding Plaintiff's Title VII claims (Count I) and state law supplemental claims (Count IV, V, VI, VII) is granted. Defendant's motion for summary judgment regarding Plaintiff's Section 1983 equal protection (Count II) and due process claims (Count III) is denied.

It is so ordered.

September 27, 2012

_____

Hon. Sharon Johnson Coleman
United States District Court